# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| JARIUS L. SMITH, SR., | )  |
|     *Plaintiff*, | ) Case No. 3:25-cv-477 |
| v. | ) Judge Atchley |
| KNOX COUNTY SHERIFF'S OFFICE, CPL. LANG, NURSE WOMPLER, and TOM SPANGLER, | ) Magistrate Judge McCook |
|     *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jarius L. Smith, Sr., an inmate in the custody of the Tennessee Department of Correction ("TDOC"), filed a complaint under 42 U.S.C. § 1983 [Doc. 2] and a motion for leave to proceed *in forma pauperis* [Doc. 1] while housed at the Roger D. Wilson Correctional Facility. [Doc. 1]. Plaintiff also filed a motion for an extension of time within which to file his inmate trust account statement [Doc. 7]. For the reasons set forth below, the Court **GRANTS** Plaintiff's motions [Docs. 1, 7] and **DISMISSES** his complaint for failure to state a claim upon which § 1983 relief may be granted.

**I.  MOTIONS TO PROCEED *IN FORMA PAUPERIS* AND FOR TIME**

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). Plaintiff's motion for an extension of time within which to submit his inmate trust account information is well taken, and it [Doc. 7] will be **GRANTED** and the information deemed timely filed. And as it appears from Plaintiff's trust account information that that he lacks the financial resources to pay the filing fee in a lump sum [Doc. 8], his motion to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy. This Memorandum Opinion and Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.  SCREENING OF COMPLAINT

### A.  Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See*, *e.g.*, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. However, courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

B. **Plaintiff's Allegations**

On February 8, 2025, Plaintiff wrote medical staff at the Roger D. Wilson Detention Facility asking why he had not attended any of his doctor appointments since December 2024. [Doc. 2 at 5]. "[T]hey" wrote back that "they would look into the issue." [*Id.*]. Plaintiff wrote medical again on February 12, 2025, asking to see a doctor because he "was still in a wheelchair since Oct. 2024." [*Id.* at 5–6]. "[T]hey" responded that Plaintiff had an appointment scheduled. [*Id.* at 6].

On February 23, 2025, Plaintiff wrote medical and complained that Officer Miles hit Plaintiff's legs against his cell doorway and bedframe by "aggressively" pushing Plaintiff's wheelchair into the cell with Plaintiff in it. [*Id.*]. Plaintiff filed a grievance against Officer Miles and told "them" that he needed to see a corporal or sergeant [*Id.* at 7]. But Plaintiff "never got to talk to or see anyone." [*Id.*]. Instead, Plaintiff received a response that "[t]hey" had reviewed the video footage, that Officer Miles never entered Plaintiff's cell, that it appeared the "grievance was submitted with malicious intent[,]" and that Plaintiff would face disciplinary action. [*Id.*]. Cpl. Lindsey gave Plaintiff "disciplinary time" for lying, deception, and refusal to lockdown. [*Id.* at 6]. Plaintiff was also told to make a sick call request if he wanted to be evaluated by medical. [*Id.*].

3

Plaintiff was sent to medical later the same day, but they "did not do anything about [his] leg or situation." [*Id.*].

Plaintiff submitted a request "to get [his] shoes from [his] property" on May 9, 2025, because he had undergone two surgeries on his left leg and needed the cushion and support. [*Id.* at 5]. Additionally, the orange shoes provided by the detention facility "caus[ed] [his] right foot to ache and swell at times from being on [his] feet." [*Id.*]. Plaintiff was told to make a written request with medical, which he did, and the shoes were approved. [*Id.*]. But a few days later, Plaintiff was told that his shoes were not approved. [*Id.*]. Plaintiff made another written request for his shoes from property on May 14, 2025, that medical approved. [*Id.*]. But "they" did not give Plaintiff his shoes because of their laces and colors. [*Id.*].

On two separate occasions in July 2025, Plaintiff slipped in water and fell at the Roger D. Wilson Detention Facility. [*Id.* at 4]. The first time Plaintiff fell, which was on July 14 or 15, 2025, a pod officer told Plaintiff "to stay down and not to move." [*Id.*]. A nurse put Plaintiff in a wheelchair and took him to medical, where he received an x-ray and "a couple of Ibuprofen." [*Id.*]. Plaintiff was then returned to his cell. [*Id.*].

Plaintiff's second fall occurred on July 17, 2025. [*Id.*]. Again, the pod officer told Plaintiff "to stay down" until a nurse arrived with a wheelchair to take Plaintiff to medical. [*Id.*]. Medical personnel took an x-ray of Plaintiff's ankle and leg to "make sure that the hardware in [his] left leg wasn't out of place anywhere." [*Id.*]. Medical personnel gave Plaintiff more Ibuprofen, wrapped his ankle in an Ace bandage, and told him "they wouldn't know if anything was out of place until that Monday." [*Id.*]. The nurse asked Plaintiff if he fell because he was not using a cane, but he responded, "[N]o. The reason is because water was on the floor without any wet floor signs out." [*Id.*].

On July 18, 2025, Plaintiff filed a request to be moved to a handicapped-accessible building, because his building had no handicapped showers and Plaintiff was in a wheelchair at the time [*Id.* at 5]. Plaintiff wrote medical asking for medication for knee pain, and medical ordered Plaintiff a refill on August 2, 2025 [*Id.* at 6]. When Plaintiff requested more pain medication on August 20, 2025, "[t]hey" told him he could purchase Ibuprofen or Tylenol from the commissary [*Id.*]. But Plaintiff is indigent and could not afford to purchase pain medications. [*Id.*].

On September 2, 2025, Plaintiff notified "a couple of officers" and had once notified Ms. Wompler of the leg and ankle swelling he has experienced since falling in July 2025. [*Id.* at 7]. Plaintiff never received any information about the x-rays that were taken in connection with his falls. [*Id*]. Plaintiff showed Officer Hull his foot around shift change, and Officer Hull told Plaintiff he would notify third shift so that Plaintiff could go to medical. [*Id.*]. However, when shift change occurred, Cpl. Lang would not send Plaintiff to medical or look at his foot. [*Id.*]. Instead, she called medical and told Plaintiff that he was already on the waiting list for four medical requests. [*Id.*]. But that is not true. [*Id.*]. Cpl. Lang also told Plaintiff that he would "be put on the bottom of the list if [he] filed anymore medical request[s]." [*Id.*].

Plaintiff again wrote medical on September 3, 2025, for the swelling and aching he continuously experienced since his slip and fall in July 2025. [*Id.* at 6]. "[T]hey" referred Plaintiff to the sick call list and told him he would be charged a $10 fee. [*Id.*]. Plaintiff walks with a limp because he was in a wheelchair for five-and-a-half to six months without "any therapy treatment." [*Id.* at 6–7].

Aggrieved, Plaintiff filed the instant action against Defendants Knox County Sheriff's Office, Cpl. Lang, Nurse Wompler, and Sheriff Tom Spangler, seeking "proper medical treatment" and monetary damages. [*Id.* at 10].

5

C. **Analysis**

Plaintiff filed his civil rights complaint on or about September 18, 2025. [*See* Doc. 2 at 10]. Although Plaintiff does not disclose his custodial status in his complaint [*see generally id.*], the Court notes that TDOC records indicate Plaintiff was sentenced in Knox County, Tennessee on October 1, 2025. *See* Tenn. Dep't of Corr., *Felony Offender Information*, https://foil.app.tn.gov/foil/details.jsp (last visited Nov. 6, 2025).[1] Therefore, the Court presumes, to Plaintiff's benefit, that he was a pretrial detainee during all relevant times mentioned in his complaint.

A pretrial detainee derives his constitutional protections from the Fourteenth Amendment to the United States Constitution. *See Westmoreland v. Butler Cnty.*, 29 F.4th 721, 726 (6th Cir. 2022). The Fourteenth Amendment's Due Process Clause protects detainees from being "punished prior to an adjudication of guilt[,]" *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), while the Eighth Amendment protects convicted prisoners from "cruel and unusual punishments," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting U.S. Const. amend VIII). And while a plaintiff must establish "deliberate indifference" to his rights to state a claim under either amendment, the Eighth Amendment's standard is more rigorous, as a prisoner must allege facts meeting both an objective element of seriousness and a subjective element of conscious culpability under that test. *See Westmoreland*, 29 F.4th at 726, 728. Under the Fourteenth Amendment, however, the subjective element of the test is modified such that a detainee "need only make 'an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly.'" *Davis v. Chorak*, No. 22-1839, 2023 WL 2487339, at *2 (6th Cir. 2023) (quoting *Westmoreland*, 29 F.4th at 729).

---

[1] The Court takes judicial notice of Plaintiff's publicly available TDOC records. *See Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites." (citations omitted)).

6

To state a claim under § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. And to state a claim against the individual Defendants in their respective personal capacities, Plaintiff must adequately plead that each Defendant, by his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). That is, constitutional liability cannot attach to a Defendant solely based on his position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell,* 436 U.S. at 691 (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor"). The Court addresses Plaintiff's claims with these considerations in mind.

### 1. Defendants Spangler and Knox County Sheriff's Office

Plaintiff's complaint does not contain any factual allegations against Sheriff Tom Spangler [*See generally* Doc. 2]. And his status as Sheriff is insufficient to demonstrate his involvement in any alleged constitutional violation. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (finding defendant could not be held liable based on a failure, as head of the department, to oversee subordinates). Thus, Plaintiff has failed to state a claim against Defendant Spangler, and the Court will **DISMISS** him from this action.

Plaintiff has also named the Knox County Sheriff's Office as a Defendant. [Doc. 2 at 3]. But a sheriff's office is not an entity subject to suit under § 1983. *Anciani v. Davidson Cnty. Sheriff Office*, No. 3:19-CV-169, 2019 WL 1002503, at *2 (M.D. Tenn. Feb. 28, 2019) ("It is well established that in Tennessee federal courts, a sheriff's office or police department is not a 'person'

7

subject to suit under 42 U.S.C. §1983." (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994))).[2] Therefore, the Court will **DISMISS** the Knox County Sheriff's Office.

### 2. Medical Care

The crux of Plaintiff's complaint is that he was allegedly denied constitutionally adequate medical care [*See generally* Doc. 2]. To state a colorable denial-of-medical-care claim, Plaintiff must plausibly allege that (1) he had a sufficiently serious medical need to which (2) defendant(s) "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023) (citation omitted).

As to the first component, a medical need is deemed sufficiently serious if it has been diagnosed by a doctor as requiring treatment or is so obvious that even a lay person would recognize the need for medical attention. *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022) (internal quotations and citation omitted). A defendant displays the requisite culpability to satisfy the second component when the defendant's "'action (or lack of action) was intentional (not accidental) and [he or] she either (a) acted intentionally to ignore [the detainee's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to' the detainee." *Id*. (citing *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021)).

But where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537

---

[2] Plaintiff does not attribute any wrongdoing to a custom or policy of Knox County itself, such that the County itself could be liable under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of [its] official policies or established customs").

8

Case 3:25-cv-00477-CEA-JEM   Document 9   Filed 11/07/25   Page 8 of 15   PageID #: 46

F.2d at 857, 860 n. 5 (6th Cir. 1976). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### a. Defendants Wompler and Lang

Plaintiff's specific allegations against Defendants Wompler and Lang are that (1) Plaintiff once notified Ms. Wompler of his leg and ankle swelling and showed her the swelling [Doc. 2 at 7]; and (2) Cpl. Lang would not send Plaintiff to medical on September 2, 2025, after Plaintiff complained of swelling, and she told Plaintiff he would be "put on the bottom of the list if [he] filed any more medical request[s]" [*id.*].

As to Defendant Wompler, Plaintiff does not allege any facts about Defendant Wompler's response to Plaintiff's complaint of leg swelling. Therefore, his allegations against her are insufficient to plausibly allege that she deliberately ignored his needs or recklessly failed to respond to those needs. As to Cpl. Lang, Plaintiff alleges that Cpl. Lang contacted medical in response to Plaintiff's complaints and was informed that Plaintiff already had four pending medical requests. [*Id.*]. Plaintiff does not allege, nor can the Court infer from the facts presented, that Cpl. Lang had the authority to require medical staff to override their procedures and evaluate Plaintiff immediately. And the fact that she allegedly threatened that Plaintiff would be "put on the bottom of the list" if he kept filing requests fails to state a constitutional violation because (1) there is no indication in the record that Cpl. Lang has any control over the sick call list for medical visits and would have been the person responsible for Plaintiff's placement on the sick call list, and (2) verbal harassment or threats by a prison official does not give rise to a constitutional violation. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987); *White v. Hamilton Cnty. Jail*, No. 1:08-CV-53, 2011 WL 864855, at *8 (E.D. Tenn. Mar. 10, 2011) (finding the plaintiff's "claim that some of the defendants engaged in verbally abusive behavior, laughed at him, and ridiculed him,

9

fails to state a constitutional violation"). And, the Court notes, Plaintiff states that he was able to make a sick call request the day after these events allegedly occurred. [Doc. 2 at 6]. Therefore, Plaintiff has failed to state a plausible § 1983 claim against either Defendant Wompler or Lang, and the Court will **DISMISS** these Defendants.

### b. Other Allegations Related to Medical Care

Plaintiff's remaining allegations related to his medical care are that (1) he did not go to his doctor's appointments; (2) "they" sent Plaintiff to medical after the incident with Officer Miles, but "did not do anything about [his] leg or situation"; (3) medical approved Plaintiff's shoes but "they" would not allow him to have the shoes; (4) "they" told him to purchase pain medication from commissary following Plaintiff's request for a refill; (5) "they" told Plaintiff he would be charged a $10 fee for sick call visits; and (6) he was not permitted "any therapy treatment[,]" which has caused him to now walk with a limp. [*See generally* Doc. 2 at 4–8].

Plaintiff does not associate these events with any particular Defendant. And he cannot sue "medical" in this action, because "medical departments are not 'persons' under § 1983[.]" *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006). Further, to the extent "they" are intended as Defendants in this action, the mere filing of a complaint does not commence a civil action against that unidentified party. *See Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *5 (E.D. Tenn. Nov. 4, 2009) ("A civil action cannot be commenced against a fictitious party such as an unknown John Doe." (citing *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968))). Instead, "until an amendment adding additional defendants has been permitted by the court," allegations against an unknown defendant "are merely 'surplusage[.]'" *Dunn v. Paducah Int'l Raceway*, 599 F. Supp. 612, 613 n. 1 (W.D. Ky. 1984) (citing *Hannah v. Majors*, 35 F.R.D. 179, 180 (W.D. Mo. 1964)).

Plaintiff's failure to name a responsible individual is of no consequence to the resolution of these allegations, however, because the complained-of conduct does not rise to the level of a constitutional violation. First, in response to Plaintiff's inquiry into his doctor's appointments, medical staff informed him that he had an appointment scheduled. [Doc. 2 at 6]. This response does not plausibly suggest deliberate indifference.

Second, Plaintiff was evaluated by medical following the incident with Officer Miles on February 23, 2025. [*Id.*]. While Plaintiff complains that they "did not do anything[,]" there are no facts before the Court that would permit the inference that failure to offer medical intervention was reckless, as opposed to a reasoned medical judgment that no treatment was indicated.

Third, a prison official would not permit Plaintiff to wear his shoes from property because of their laces and colors. [*Id.* at 5]. But even assuming Plaintiff had a serious medical need for his own shoes, he has not presented any allegations from which the Court could infer that the prison official who rejected the request was aware of his need, let alone deliberately indifferent to it. Moreover, it is apparent that the medical staff responsible for medical treatment at the facility did approve Plaintiff's request, and therefore, there can be no liability on the part of any unnamed medical staff member as to these allegations. *See, e.g.*, *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted).

Fourth, the Court considers Plaintiff's claim that medical personnel told him to purchase pain medication from the commissary, even though he, as an indigent, could not afford to do so. [Doc. 2 at 6]. But Plaintiff maintains that, following his slip and falls at the facility in July, medical staff (1) put him in a wheelchair and took him to medical; (2) x-rayed his injuries; (3) gave him Ibuprofen; (4) wrapped his leg in an Ace bandage; and (5) ordered a refill of Plaintiff's pain

medication in August. [*Id.* at 4–6]. Therefore, the events as recounted by Plaintiff do not suggest that any medical staff member ignored Plaintiff's medical needs. And there are no facts that would permit the inference that medical personnel's failure to permit Plaintiff additional refills was in reckless disregard to his needs, as opposed to a medical judgment that further treatment was medically unnecessary.

Fifth, Plaintiff complains that he was advised he would be charged $10 for sick call visits. [*Id.* at 6]. But Plaintiff does not allege that he was denied medical treatment because he was unable to pay the $10 fee, and there is no requirement that jails provide medical care free of cost. *See Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3rd Cir. 1997) (holding deliberate indifference standard does not guarantee prisoners the right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society); *Bailey v. Carter*, 15 F. App'x 245, 250–51 (6th Cir. 2001) (holding policy requirement of payment for medical services, where funds are available, does not violate an inmate's constitutional rights); *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) (requiring inmates to pay for their own medications if they can afford to do so is not a federal constitutional violation). Therefore, charging Plaintiff for medical services is not a constitutional violation.

And finally, Plaintiff states he was not permitted "any therapy treatment[,]" even though he was in a wheelchair for several months, and he alleges that he now walks with a limp as a result. [Doc. 2 at 6–7]. But Plaintiff does not allege that he was prescribed any therapy, or that his need for it was obvious and disregarded by medical staff. Therefore, this allegation fails to state a plausible constitutional claim.

In sum, Plaintiff has failed to allege sufficient facts to permit a plausible inference that his serious medical needs were met with a deliberate and reckless disregard. Accordingly, the Court will **DISMISS** all medical-care claims. *Twombly*, 550 U.S. at 570 (finding where plaintiff has "not

nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed").

### c. Unavailable Relief

Additionally, the Court finds that Plaintiff's request "for proper medical treatment" [Doc. 2 at 10] is outside of Defendants' powers, as he has been transferred to the Bledsoe County Correctional Complex ("BCCX") since he filed his complaint. [*See* Doc. 6]. Accordingly, dismissal of Plaintiff's claims for this relief is appropriate. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding inmate's claim for declaratory and injunctive relief against prison officials became moot once prisoner was transferred to different facility); *see also Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003) (affirming dismissal of claim for injunctive relief as moot where prisoner "transferred from prison of which he complained to a different facility").

### 3. Use of Force

Plaintiff's complaint does not raise an excessive force claim. But out of an abundance of caution, the Court considers Plaintiff's allegation that Officer Miles, who is not named as a Defendant in this action, "aggressively" pushed Plaintiff's wheelchair, causing Plaintiff's legs to hit the doorway and bedframe. [Doc. 2 at 6]. In order to state a claim that a particular use of force violated Plaintiff's constitutional rights, Plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Plaintiff fails to do so in this case. He does not allege, for instance, that he suffered any injury as a result of the use of force, or that Officer Miles deliberately pushed Plaintiff into the doorway and/or bedframe. And "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Scheid v. Fanny Farmer Candy*, 859 F.2d 434, 437 (6th Cir. 1988) (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976)). Therefore, Plaintiff's complaint alleges, at most, negligence, which cannot

form the basis of a § 1983 claim. *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 331–32 (1986). Accordingly, to the extent Plaintiff intended to sue for the force used against him by Officer Miles, the Court will **DISMISS** this claim.

### 4. Disciplinary Charge

Plaintiff's complaint also fails to raise an express claim related to the disciplinary writeup he received. Nonetheless, the Court will also consider any intended claim that non-Defendant Cpl. Lindsey gave Plaintiff "disciplinary time" for lying, deception, and refusal to lockdown. [Doc. 2 at 6]. However, inmates possess no right to be free from charges or convictions of prison disciplinary offenses. *Wolff v. McDonnel*, 418 U.S. 539, 564–71 (1974). This is so even if the charge is untrue. *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98–5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitution a constitutional violation redressable under § 1983."). Accordingly, any allegation that Plaintiff was improperly given "disciplinary time" likewise fails to state a constitutional claim.

## III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motions for an extension of time [Doc. 7] and for leave to proceed *in forma pauperis* [Doc. 1] are **GRANTED**;

2. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

3. The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

4. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983, and it is therefore **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

5. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* FED. R. APP. P. 24.

An appropriate Judgment Order will enter.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**